**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

Vinayak Properties, LLC,                                     Case No.: 8:13-bk-05672-CPM
d/b/a Holiday Inn, Sarasota Airport                          Chapter 11

                Debtor.                 /

**DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY**

Vinayak Properties, LLC ("Vinayak"), a Florida limited liabilities company, as debtor and debtor-in-possession ("Debtor"), pursuant to Administrative Order FLMB−2009−1, hereby files its Chapter 11 Case Management Summary (the "Summary"), and states:

**INTRODUCTION**

On the 30th day of April, 2013 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

**I.     DESCRIPTION OF DEBTOR'S BUSINESS**

Vinayak Properties, LLC, a single-asset Florida Limited Liability Company, owns and operates a full service Holiday Inn Hotel franchise with 135 hotel rooms, full restaurant and bar, business center, health and fitness center, indoor pool, sauna and steam room, located in Sarasota, Florida.  The Holiday Inn Sarasota Airport (the "Hotel") is located at 8009 East 15th Street, Sarasota, Florida 34243, just northeast of the Sarasota/Bradenton International Airport. The Hotel includes a six story atrium, glass elevators, waterfall and bar and full-service restaurant.

**II.    LOCATION(S) OF DEBTOR'S OPERATIONS AND WHETHER LEASED OR OWNED**

Vinayak's location of operation is located at 8009 15th Street East, Sarasota, FL 34243, which is located northeast of the Sarasota Airport.  The property at this location is owned by the Debtor.

**III.   REASON FOR FILING CHAPTER 11**

Vinayak entered into a License Agreement with Holiday Inn Franchising, Inc. ("Holiday Inn") wherein Holiday Inn granted a license to Vinayak to operate a Holiday Inn Hotel and Suites hotel at the above referenced location (the "Hotel").  The acquisition of the land and the construction were financed through a construction loan dated June 15, 2007 in the amount of

$13,400,000 (the "Note") from Cadence Bank, as successor in interest to Superior Bank, a federal savings bank which was taken over by the FDIC (the "Lender"). The Note was designed to be an interest only loan until construction was complete and then convert to an amortizing loan. On June 14, 2010 and again on December 10, 2010, the Note was modified and amended, extending the date on which it would convert to an amortizing loan. The first payment of principal and interest was due on February 10, 2012. Although Vinayak had hoped to be able to pay interest and principal on February 10, 2012, Vinayak determined in December 2011 that its cash flows were likely to be inadequate and immediately commenced a dialogue with the Lender to negotiate an additional modification to the Note. Cadence and Vinayak were unable to reach agreement on a modification resulting in the filing by Cadence of an action in foreclosure in the Circuit Court of Florida serving Manatee County [*Cadence Bank, N.A., as successor by merger to Superior Bank, N.A., as assignee of the FDIC as Recever for Superior Bank, F.S.B., Plaintiff vs. Vinayak Properties, LLC, A Florida limited liability company; Atul Patel, an individual; Bhupendra Patel, an individual; Nilesh K. Patel, an individual; Jiten K. Patel, an individual; Convention Center Squar Condominium Association, Inc., a Florida not-for-profit corporation, Defendants, Case Number 2012-CA-4716*].

Vinayak began construction of the hotel facility at the above referenced location in 2007 and according to the License and Franchise Agreements, was required to be finished with all construction, upgrades and renovations by June 16, 2009.  On February 21st, 2008, Vinayak entered into a formal franchise agreement with Holiday Inn.

The Hotel became operational in 2009 and has never performed to its potential for a variety of reasons.  First, there were undeveloped plans and proposals to have the Sarasota Convention Center (the "Convention Center") fully renovated to accommodate major conventions for various industries and professionals.  The land for the Hotel was acquired from the owner of the Convention Center. At the time of acquisition, Vinayak anticipated significant Convention Center-related food, bar and guest-room business Convention Center renovations. The Convention Center was never renovated for reasons outside of Vinayak's knowledge and control. The Hotel's relative location to the Convention Center and Sarasota Airport had such renovations been completed would likely have increases Vinayak's revenue because the Hotel was intentionally designed to accommodate business professionals and guests traveling in and out of the Sarasota Airport; it was well designed to accommodate the needs of business and tradeshow visitors. Since acquiring the land and initiating the Hotel, flights in and out of the Sarasota have declined and some airlines have discontinued service to the airport. Vinayak's management has recently been informed that all renovation proposals have been scrapped and a new proposal has been offered to convert the Convention Center parking lot into an RV sales and leasing facility.  This new proposal would severely impact the Hotel and Hotel valuation.

Second, the British Petroleum (BP) Oil Spill also severely disrupted the Hotel's potential over the last several years.  The BP Oil Spill disaster and the subsequent pollution of the relative coastlines caused a significant decline in tourism and tourist traffic to and from the gulf coast of Florida.  It clearly caused revenue loss across the spectrum of tourist related industries, including hotels operations.  Vacationers decided to change their destinations and cancel reservations for hotels, resorts, and other temporary residential lodging in the State of Florida for several years. As a result, hotels were forced to actively respond to cancellations by reducing or discounting

costs of stay and accommodations for their guests. The BP Oil Spill severely limited the Hotel's potential over the last several years.

Third, the hotel industry in general is a seasonal industry, especially in the State of Florida, and often presents significant challenges to owners and management. Vinayak was able to make payments during the low-revenue months prior to the date that the loan converted from interest only to an amortizing loan of principal and interest; the individuals who guaranteed the Note contributed, as needed, to assist in months when Hotel revenue was inadequate. However, once the Note converted, and Vinayak was required to make principal and interest payments, it was impossible to make such payments during the low-revenue months, and difficult even during many of the peak hotel season. The guarantors to the Note were unable to fund the difference of principal and interest on a monthly basis, having depleted their assets to keep the Hotel operating.

Despite these many challenges, Vinayak has continued to operate the Hotel and they desire to implement a plan that will allow the Hotel to succeed. Vinayak and its management have worked very closely with the Lender to create a solution and were nearing a deal during the month of April, but unfortunately, the terms and conditions proposed late in negotiations by the Lender were not feasible for Vinayak and the interested parties. As such, Vinayak decided to file a petition for protection under Chapter 11 of the United States Bankruptcy Code and attempt to create plan of reorganization that is feasible and serves to protect the competing interest of creditors and other stakeholders.

## IV. LIST OF OFFICERS AND DIRECTORS AND THEIR SALARIES AND BENEFITS AT TIME OF FILING AND DURING ONE YEAR PRIOR TO FILING

1. Time of Filing:

| **Name** | **Title** | **Salary** |
|---|---|---|
| Jiten Patel | Managing Member | $0[1] |
| Nilesh Patel | Managing Member | $0 |

2. One year prior

| **Name** | **Title** | **Salary** |
|---|---|---|
| Jiten Patel | Managing Member | $0 |
| Nilesh Patel | Managing Member | $0 |

---

[1] Mr. Patel is affiliated with Ohm Teerth Investment & Consulting, LLC, a Florida limited liability company, which has a management agreement with the Debtor and is entitled to receive 5% of monthly gross revenue. The management fees have not been paid since July 2012 and Mr. Patel has received no fees, income or salary as a result, although he has continued to provide management services through Ohm Teerth.

3

V.  **DEBTOR'S ANNUAL GROSS REVENUE**

    2011:  approximately $3,495,881
    2012:  approximately $3,591,734
    2013 through April 26th:  $1,298,528.39

VI.  **AMOUNTS OWED TO VARIOUS CLASSES OF CREDITORS**

The Debtor may owe approximately the following amounts to the following classes of creditors, certain amounts of which may be subject to dispute:

| | |
|---|---|
| Priority Creditors: | None |
| Taxes and other certain unsecured priority debts (including property taxes): | $75,646.04 |
| Secured Creditors: | $13,462,619.24 |
| Unsecured Creditors: | $6,748,536.07 |

VII.  **GENERAL DESCRIPTION AND APPROXIMATE VALUE OF DEBTOR'S CURRENT AND FIXED ASSETS**

As of the date of its petition, Debtor had the following assets in the approximate values indicated below, all values reflect original cost wherever applicable:

| | |
|---|---|
| Property located at 8009 East 15th Street, Sarasota, FL | 7,418,943.00 |
| Cash and Checking | $1,800.000 |
| Financial Accounts | $17,365.04 |
| Security Deposits | $37,153.38 |
| Accounts Receivables | $2,000.00 |
| Franchise License | Unknown |
| Company Vehicle | $20,000.00 |
| Office Equipment, Furnishings & Supplies | $183,481.08 |
| Machinery, Fixtures, Equipment, & Supplies used in Business | $2,545,676.87 |

VIII.  **NUMBER OF EMPLOYEES AND AMOUNT OF WAGES OWED AS OF PETITION DATE**

The Debtor currently has 0 employees. As of the Petition Date, the Debtor's accrued payroll obligations are approximately $00. There are 50 salaried and hourly workers. All workers are leased through an employee leasing company. The leasing company, Progressive Employer Management Company II, Inc. (PEMCO), has been paid through the date of petition for all salaries, wages, taxes and benefits.

IX.  **STATUS OF DEBTOR'S PAYROLL AND SALES TAX OBLIGATIONS**

The Debtor currently owes approximately $00 in gross wages for the pre-petition period.

The Debtor is current on its payroll tax obligations.
As of the Petition Date, the Debtor was current on sales taxes.

## X.     ANTICIPATED EMERGENCY RELIEF WITHIN 14 DAYS OF PETITION DATE

1. Motion for Order Authorizing the Use of Cash Collateral of Cadence Bank.
2. Motion for Order Establishing Adequate Assurance for Payment of Utilities

**WHEREFORE**, Debtor, VINAYAK PROPERTIES, LLC respectfully submits this Case Management Summary.

Respectfully submitted,

*/s/* Katie Brinson Hinton
Katie Brinson Hinton, Esquire
Florida Bar No. 0022367
katie@mcintyrefirm.com
McINTYRE, PANZARELLA, THANASIDES,
   BRINGGOLD & TODD, P.A.
6943 E. Fowler Avenue
Temple Terrace, Florida 33617
813.899.6059
813.899.6069 (F)
*Attorneys for the Debtor*

and

Rochelle Friedman Walk, Esquire
Florida Bar No. 88877
Rochelle@walklawfirm.com
Walk Law Firm, P.A.
102 W. Whiting Street
Suite 301
Tampa, FL 33602
PH: 813.999.0199
FAX: 813.839.4896
*Co-Counsel for the Debtor*

5

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of May, 2013 the foregoing Case Management Summary was furnished via CM/ECF and/or US Mail to all parties in interest listed on the attached mailing matrix.

>                               */s/* Katie Brinson Hinton
>                               Attorney